UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LONNIE HALL,

        Plaintiff,

        v.          CAUSE NO.: 3:20-CV-142-RLM-MGG

RON NEAL, et al.,

        Defendants.

## OPINION AND ORDER

Lonnie Hall, a prisoner without a lawyer, filed motions for a preliminary injunction for an immediate transfer to a protective custody unit. He says he has been repeatedly targeted for violence by other inmates at several facilities maintained by the Indiana Department of Correction. He gives several reasons for these attacks, including his sexual orientation, his former affiliation with gangs, and his cooperation with departmental investigations and criminal prosecution. The Warden responds that departmental officials have taken significant measures to protect Mr. Hall and that there is no substantial risk of serious harm at his current housing location.

The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." <u>Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.</u>, 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief,

outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." Joelner v. Village of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir. 2004). "A potential injury is irreparable when the threatened harm would impair the court's ability to grant an effective remedy." EnVerve, Inc. v. Unger Meat Co., 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). "Irreparable harm is harm which cannot be repaired, retrieved, put down again, [or] atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it." Graham v. Med. Mut. of Ohio, 130 F.3d 293, 296 (7th Cir. 1997).

To obtain a motion for a preliminary injunction, Mr. Hall must show a reasonable likelihood of success on the merits and that he will suffer irreparable harm absent injunctive relief. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[T]o state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the

2

plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005).

The parties don't dispute that other inmates have attacked Mr. Hall at other facilities or that departmental officials have taken significant measures throughout the years to address these concerns. Since at least 2011, departmental officials have moved Mr. Hall within and between facilities several time for various reasons, including mental health, safety, and disciplinary sanctions. In July 6, 2019, at the Miami Correctional Facility, gang members assaulted Mr. Hall due to his sexual relationship with another inmate, which resulted in his admission to the infirmary for two weeks. Upon discharge, he was placed in an honor dormitory pending a transfer to another facility.

On August 9, 2019, Mr. Hall was transferred to the Indiana State Prison to remove him from his assailants, and he was placed in general population. Shortly after his arrival, Mr. Hall reported that gang members forced him to send them money, and another inmate sexually assaulted him and requested protective custody based on these concerns. He was locked in a protective custody cell pending an investigation. Other inmates saw him in that cell and began to threaten him, throw apples at him, and tried to hit him due to his protective status. In response, he threw a cup of liquid toward the other inmates and out of his cell. As a result, he received a conduct report and was placed in disciplinary segregation. Correctional officials investigated Mr. Hall's request for protective custody but couldn't substantiate it.

Mr. Hall remains in the disciplinary unit at the Indiana State Prison. He says he still faces a substantial risk of harm because disciplinary unit inmates routinely assault each other through their cell bars with makeshift spears, boiling water, and bodily waste and by removing panels from the recreational cages to get access to other inmates. Other inmates have threatened him and he doesn't leave his cell for recreation or showering, instead choosing to exercise in his cell and to bathe using his sink. Mr. Hall believes that inmate employees working in the disciplinary unit could be persuaded with drugs or money to assault him, and he has covered his cell bars with a blanket to prevent other inmates from harming him with projectiles or liquids. The Warden represents that Mr. Hall is housed in a single cell and is escorted by two correctional officers at all times during movement. Staff monitors him at least once every thirty minutes, and inspect his cell daily to maintain safety and sanitation.

The Warden suggests that Mr. Hall doesn't want protective custody, but the record offers no basis to question the sincerity of Mr. Hall's concerns or that other inmates have variety of motivations for attacking to him. Though Mr. Hall has recently asked to return to general population, he explains that his understanding is that this move is required for his request for a protective custody unit to be considered. This understanding likely stems from the fact correctional staff expressly advised him that he could resubmit his request once he was released from the disciplinary unit. ECF 6-7; ECF 6-13. The Warden also notes that Mr. Hall signed a waiver of protective custody. Mr. Hall concedes that he signed it but explains that he did so in an effort to leave the disciplinary unit

4

and was never offered housing in a protective custody unit. By contrast, the Warden has offered no context for the signing of this waiver form, and refusing housing in a protective custody unit seems entirely inconsistent with Mr. Hall's conduct as demonstrated by the record, including his repeated requests for such housing and filing this lawsuit.

Still, the court can't conclude that correctional officials are acting with deliberate indifference to Mr. Hall's safety needs or that Mr. Hall will suffer irreparable harm without injunctive relief. The record reflects that Mr. Hall has been moved many times for safety concerns, and is now housed in a single cell in a unit where inmates are regularly monitored and where two staff members escort him whenever he's not in his cell. While correctional staff might not have eliminated the risk of harm to Mr. Hall, these meaningful safety measures don't amount to deliberately indifferent conduct. Moreover, Mr. Hall indicates that he is safe because of the additional safety measures he himself has imposed, including remaining in his cell and covering the cell bars. Mr. Hall expresses dissatisfaction with the lack of access of showers and a recreational time out of his cell, but these issues don't rise to the level of irreparable harm. More concerning is Mr. Hall's report that he has repeatedly engaged in self-harm because he hasn't received a transfer, but the allegations in his complaint strongly suggest that this conduct is a conscious effort to manipulate correctional and medical staff rather than a legitimate medical concern.[1]

---

[1] In the complaint, Mr. Hall states, "I have made decisions over the last 6 months to keep me safer and prevent assault by opposing offenders," and describes incidents where "[he] said [he] was gonna kill

Further, Mr. Hall indicates that he has received immediate medical care after these incidents and that he has access to mental health care.

Finally, with respect to the competing and public interests, unnecessary intrusions into the management of prisons are generally disfavored. See 18 U.S.C. § 3626(a) (prison-related injunctions must be necessary to remedy the violation and narrowly tailored); Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). After considering the relevant factors, the court finds that Mr. Hall hasn't demonstrated that he is entitled to injunctive relief, and the motion for a preliminary injunction is denied.

For these reasons, the court DENIES the motions for a preliminary injunction (ECF 2, ECF 13).

SO ORDERED on March 13, 2020

                                                    s/ Robert L. Miller, Jr.
                                                   JUDGE
                                                   UNITED STATES DISTRICT COURT

---

[him]self if mental health staff didn't come speak to [him]" and where "[he] decided to swallow razorblades and cause mental health to transfer [him] to a mental health unit."